## REEL *vs.* OVERALL ET AL.

[BILL IN EQUITY BY HUSBAND, TO ENFORCE CHARGE AGAINST SEPARATE ESTATE OF DECEASED WIFE.]

1. *Contract between husband and wife, relative to wife's estate.*—A married woman, having a separate estate created by contract, may make a valid contract with her husband in relation to it, unless the instrument creating the estate imposes some restraint on her power of alienation; and where her separate estate is held under the act of 1848, (Session Acts 1847-48, p. 79,) her power to charge or dispose of it was, until the 13th February, 1850, governed by the same rules that apply to separate estates created by contract; but such contract between husband and wife is now prohibited by section 1985 of the Code, and, if not prohibited by the proviso to the 5th section of the act of 1850, (Session Acts 1849-50, p. 64,) was required by that section to be executed, proved, and recorded, in like manner with conveyances of real estate; and these provisions of the Code and of the act of 1850, from the time when they respectively took effect, have applied to separate estates held under the act of 1848.

2. *Averments of bill construed against plaintiff.*—Where the validity of a contract, which the bill seeks to enforce, depends on the time when it was made, and the bill fails to aver the time when it was made, it will be presumed to have been made at a time when it was not authorized by law.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. N. W. COCKE.

THE bill in this case was filed, on the 11th February, 1861, by John Reel, against Frances Ann Kelso, Amelia Kelso, and James Kelso, infants, and devisees under the will of the complainant's deceased wife, and against G. Y. Overall, their guardian. Its object was to enforce against the property belonging to the separate estate of the complainant's deceased wife, which consisted of certain city lots in Mobile, and which she had devised to the infant defendants, a claim for moneys advanced and expended by the complainant, both before and during the coverture, in paying for the said lots, and in erecting improvements on them; and, to this end, it prayed an account of the expenditures and of the

Reel v. Overall et al.

rents, the declaration of a lien on the lands for the balance that might be ascertained to be due to the complainant, an injunction of an action at law which had been brought against him to recover the possession of the lots, and general relief. The bill alleged, that the complainant and his said wife (then Mrs. Lambert) were married in March, 1849; that she was then in possession of said lots as her separate estate; that she died in July, 1860; that the complainant advanced eight hundred dollars to her, prior to their marriage, to pay the balance due for the purchase-money of the lots; that he expended about six thousand dollars, after the marriage, in erecting valuable improvements on the lots; and that "it was at all times understood and agreed between them, (and said expenditures were made only on that consideration,) that said buildings and improvements should belong to him, and were a lien on said lands, and were always so treated and recognized by her"; but it nowhere alleged the time when the improvements were erected, nor the manner in which the separate estate of the wife was held,—whether under the statute, or under a deed or will.

The chancellor sustained a demurrer to the bill, so far as it sought relief on account of moneys expended during the coverture; and, on final hearing, on pleadings and proof, dismissed the bill, but without prejudice; and both of these decrees are now assigned as error.

CHANDLER & McKINSTRY, for appellants.

G. Y. OVERALL, contra.

STONE, J.—Mr. Reel intermarried with Mrs. Lambert in 1849. She died in 1860. At the time of the marriage, Mrs. Lambert owned a lot or lots in the city of Mobile, which she devised by her will to certain nephews and nieces, excluding her husband from her bounty. She appointed Mr. Overall her executor, who has qualified as such, and has also been appointed guardian to the devisees, who are infants. The present bill is filed to collect out of the property devised, first, the sum of eight hundred dollars, which the complainant avers he advanced to or for Mrs. Lambert, before the marriage, with which to pay off a lien or incum-

brance on the lots for that amount ; and, second, to recover moneys expended by him in improving said lots. There was an answer, and also a demurrer to the bill. The chancellor sustained the demurrer to the claim for improvements, but overruled it as to the ante-nuptial advance of eight hundred dollars. Testimony was taken by the defendants, and the case was finally heard before the chancellor on pleadings and proofs. The complainant offered no proof of his claim for $800, the justness of which was denied in the answer ; and the court rightly dismissed this feature of the bill, at his costs. In fact, the argument does not question the correctness of this decree.

The only question, then, which we need consider, arises on the claim of complainant for alleged improvements placed on the lots by him. The language of the bill in this connection is as follows : "That your orator was a laboring man, of limited means ; that the buildings on the lot were small, inconvenient, and dilapidated ; that, at the request of the said Nancy Ann," (the wife,) "he made many alterations and valuable improvements, of the value of $6,000, or thereabouts, so that not only was there a new and costly dwelling-house erected thereon, but two other buildings that are valuable, and each of them produces a considerable income ; that it was at all times understood and agreed upon between the said Nancy Ann and your orator, and the expenditures were made only on that consideration, that the buildings and improvements and erections, erected and placed by him on said piece of land, should belong to him, and were a lien on said lands, and were always treated by her, and recognized by her, as his own property, and a lien on said lands."

Waiving, for the present, the consideration of the question, whether these averments make a case for relief, if the alleged agreement had been between strangers, the inquiry presents itself, can a married woman, having a separate estate, contract with her husband in reference thereto, and will the court of chancery recognize and enforce such contract ?

It is undoubtedly the law of this State, that a married woman, having a separate estate created by contract, if the

contract imposes no restraint on her power of alienation, may contract with her husband in relation thereto, and such contract, in a proper case, will be recognized and enforced in equity.—2 Story's Equity, § 1371; *Booker v. Booker,* 32 Ala. 471; *Andrews v. Andrews,* 28 Ala. 432.

The act "securing to married women their separate estates," approved March 1st, 1848, contains no restriction on the wife's power of disposition.—Pamphlet Acts, 1847–8, p. 79. Such estates, at least until February 13th, 1850, were governed by the same rules which govern estates made separate by contract.—*Hooper v. Smith,* 23 Ala. 639; *Blevins v. Buck,* 26 Ala. 292. The subsequent enactment of Feb. 13, 1850, "to alter and amend an act securing to married women their separate estates," made substantial alterations in the *form* to be observed by married women in contracting in reference to their separate estates, if not in the *power* of the wife to contract with her husband in relation thereto.—See Pamphlet Acts, 1849–50, p. 64, § 5. By this section it is declared, that "such property, or any part thereof, may be sold by the husband and wife, and conveyed by their joint deed; and every such deed shall be executed, proved, and recorded, in accordance with the requirements of the laws now in force, regulating conveyances of real estate. * * * *Provided,* nothing in this act contained shall be so construed as to authorize the husband and wife to contract with each other for the sale and transfer of any property, real or personal." The Code declares, that "the property of the wife, or any part thereof, may be sold by the husband and wife, and conveyed by them jointly, by instrument of writing, attested by two witnesses;" and that "the husband and wife can not contract with each other for the sale of any property."—Code, §§ 1984, 1985. These provisions, after their enactment, relating as they do to the mode of transfer, fastened themselves on the separate estates of married women held under the act of 1848.—See *Warfield v. Ravesies,* 38 Ala.

Under these principles, it is clear that, if Mrs. Reel, before the 13th February, 1850, made a contract with her husband, which was otherwise unobjectionable, it will be enforced in equity. But, if she made such contract after that

time, there is not enough, in this bill, to show that the form prescribed by the statute was complied with, even if such contract was not prohibited by the *proviso* to the 5th section of the act of 1850. It would seem that there can be no serious doubt that section 1985 of the Code is prohibitory.

The bill in this case alleges, that the complainant and testator intermarried in March, 1849. It avers, in effect, that the agreement sought to be enforced was made during the coverture. It fails to aver whether it was made before or after February 13, 1850. We are thus left in doubt whether, at the time it was entered into, the parties were capable of contracting with each other, in any form in which we can understand or construe the averments of this bill. This uncertainty of averment is fatal to this feature of the bill. A complainant must show by his pleadings that he has a right to the relief he prays. We can not, in aid of the bill, presume the existence of material facts that are not averred.—*Lucas v. Oliver*, 34 Ala. 631; *Cockrell v. Gurley*, 26 Ala. 405. The bill in this case fails to aver that the complainant is entitled to the relief he prays.

Whether the alleged agreement in this case, if made before February 13, 1850, would be enforced in equity, we need not inquire.—See *Booker v. Booker*, 32 Ala. 471; *Donald v. Hewitt*, 33 Ala. 534; *Livingston v. Livingston*, 2 Johns. Ch. 537; *Garlick v. Strong*, 3 Paige, 440; *Dickinson v. Godwin*, 1 Sandf. Ch. 214; *Clabaugh v. Byerly*, 7 Gill, 354; *Dibble v. Hutton*, 1 Day, 221; *Lane v. McKeen*, 15 Maine, 304; *Daggett v. Daggett*, 5 Paige, 509; *Butler v. Buckingham*, 5 Day, 492; 1 Leading Cases in Equity, 519.

The decree of the chancellor is affirmed.